1
2
3
4
5
6
7
8
9
10          **UNITED STATES DISTRICT COURT**
11         **SOUTHERN DISTRICT OF CALIFORNIA**
12

JESSICA MANNER, *individually and on behalf of all other similarly situated*,

                                    Plaintiff,

        v.

GUCCI AMERICA, INC.,

                                    Defendant.

Case No. 15-cv-00045-BAS(WVG)

**ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

(ECF No. 21)

13
14
15
16
17
18
19
20          On December 8, 2014, Plaintiff Jessica Manner ("Plaintiff") commenced this
21   class action in San Diego Superior Court, alleging that Defendant Gucci America, Inc.
22   ("Defendant" or "Gucci") requested and recorded personal identification information
23   from Plaintiff and putative class members in conjunction with credit card purchase
24   transactions in violation of the Song–Beverly Credit Card Act, California Civil Code
25   § 1747.08.  Thereafter, Defendant removed this action to federal court.  (ECF No. 1.)
26   Now pending before this Court is the parties' joint motion for preliminary approval of
27   class action settlement. (ECF No. 21.)
28   ///

## I.      PROPOSED SETTLEMENT

The proposed settlement agreement ("Settlement" or "Settlement Agreement") applies to class members ("Class" or "Class Members") defined as: "all persons from whom Defendant requested and recorded personal identification information in conjunction with a credit card transaction in any of Gucci's eight (8) freestanding, full-priced California boutique stores during the period of December 8, 2013 through the date of notice of entry of the Preliminary Approval Order. Excluded from the Class are any specific transactions that involved shipping, delivery, servicing, installation, or a special order." (Settlement at § 1.4.)[1]

The parties agree that the Class shall be provisionally certified and that, subject to the Court's approval, Blood Hurst & O'Reardon, LLP and Carpenter Law Group will be appointed as Class Counsel and Plaintiff will be appointed as Class Representative. (*Id.* at §§ 1.6, 1.21, 2.1.)

The Settlement contemplates that all Settlement Class Members, defined as all members of the Class who have not properly and timely opted out, automatically receive by email or U.S. Mail a voucher, good for six months from the date it is sent, redeemable for either one free Gucci gift item retailed between $40.00 and $120.00,[2] or a 15% discount on a single full price merchandise purchase transaction of up to $10,000. (*Id.* at §§ 1.25, 1.26, 1.29, 2.2, Exh. E.) The discount shall be limited to $1,500. (*Id.* at § 1.29.1, Exh. E.) The vouchers will be redeemable at one of eight Gucci stores, and are non-transferrable, except to a family member. (*Id.* at § 1.29.2, Exh. E.)

In the proposed Settlement, Defendant also agrees to a change in business practices in which it will no longer request or record personal identification

---

[1] The Settlement is attached to the parties' joint notice of settlement (ECF No. 24) as Exhibit 1. All capitalized terms in this Order shall have the same meaning as set forth in the Settlement. (*See* Settlement at § 1 (Definitions).)

[2] The free gift item will be selected by Gucci and "limited based on availability at any Eligible Voucher Redemption Store." Each store will offer two gift options, with one retailed at $100.00 or more. (Settlement, § 1.29.1, Exh. E.)

information in conjunction with credit card purchase transactions, in order to fully comply with California Civil Code § 1747.08.  (*Id.* at § 2.3.)  In addition, Defendant agrees to pay all notice and administration costs, attorney's fees, and Plaintiff's service award, if approved by the Court.  (*Id.* at §§ 2.4–2.6.)

The proposed Settlement further requires an independent claims administrator to provide notice of the proposed Settlement by e-mail or first class mail, providing, among other things, a description of the terms of the Settlement, instructions for submitting a claim, and directions to accessing the Settlement website.  (*Id.* at § 3.2, Ex. B.)  The claims administrator will send mail notice to any Class Member whose email notice is returned undeliverable and will perform a re-mail for any returned mail notice.  (*Id.* at §§ 3.2.1 & 3.2.2.)  In addition to mail and email notice, the claims administrator will establish a Settlement website on which the administrator will make available the Full Class Notice, Settlement Agreement, Plaintiff's complaint, the order granting preliminary approval, memorandum in support of final approval and award of attorney's fees, as well as the final order, if approved.  (*Id* at § 3.2.3.)  The notice will also contain a toll-free number, hosted by the claims administrator, where Class Members can obtain additional information about the proposed Settlement.  (*Id.* at § 3.2.4.)  After the notice mailing date, Class Members will have ninety (90) days to submit a written objection indicating that they wish to object to the Settlement.  (*Id.* at § 3.5.)  Class Members may also send by mail a written Request for Exclusion indicating they wish to opt out of the class.  (*Id.* at § 3.6, Exh. B.)

Class Counsel will file a motion requesting an award of attorneys' fees and expenses up to $450,000.00.  (ECF No. 21 at p. 6.)  That motion will also request a service payment to Plaintiff not to exceed $5,000.00.  (*Id.*)  Each of these amounts are subject to the Court's approval.

Following final court approval of the proposed Settlement, Plaintiff and Settlement Class Members shall be deemed to have released and discharged Defendant from any and all claims that were alleged in the complaint or claims that could have

been asserted arising out of facts alleged in the complaint that took place during the class period.  (Settlement at §§ 4.3 & 4.4.)

## II.    ANALYSIS

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted).

### A.    Class Certification

Before granting preliminary approval of a class-action settlement, the Court must first determine whether the proposed class can be certified.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  In this regard, Rule 23 contains two sets of

class-certification requirements set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). "A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

"Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Otsuka*, 251 F.R.D. at 443 (citing Fed. R. Civ. P. 23(a)). "A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)).

The parties seek class certification under Rule 23(b)(3). (ECF No. 21 at p. 28.) In the context of a proposed settlement class, questions regarding the manageability of the case for trial are not considered. *See Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (citing *Amchem Prods., Inc.*, 521 U.S. at 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")).

///

///

///

### 1.    Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

The proposed Class consists of approximately 16,000 credit card consumers from whom "Gucci requested and recorded the personal identification information . . . at its eight freestanding, full-priced California boutique stores during the Class period." (ECF No. 21-1 at p. 18; ECF No. 21-2 ("O'Reardon Decl.") at ¶ 6.)  Thus, the Court finds joinder of all members is impracticable for the purposes of Rule 23(a)(1).

### 2.    Commonality – Rule 23(a)(2)

Under Rule 23(a)(2), the named plaintiff must demonstrate that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  However, "[a]ll questions of fact and law need not be common to satisfy this rule." *Hanlon*, 150 F.3d at 1019.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

In this case, Plaintiff alleges Defendant, by implementing an Information Capture Policy, requested and recorded personal identification information from each Class Member in conjunction with a credit card purchase at certain Gucci retail stores.  (*See* Compl. at ¶¶ 2, 14.)  In addition to sharing this "common core of salient facts," Class Members also share a common legal issue: whether Defendant's alleged recording of this information violated the Song–Beverly Credit Card Act.  Accordingly, the Court finds Rule 23(a)(2) is satisfied.

///

### 3.   Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class.   Fed. R. Civ. P. 23(a)(3).   The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.   "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).   "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Like the other Class Members, Plaintiff's claim is that her personal identification information was requested and recorded by Defendant in conjunction with her credit card purchase transaction at a California Gucci store.   Thus, Plaintiff and the Class Members assert the same violation of the Song-Beverly Credit Card Act, arising from the same course of conduct. (ECF No. 21-1 at p. 19; Compl. at ¶¶ 6, 17.)   Plaintiff and Class Members also seek the same relief for this alleged wrongful conduct. (*Id.*; Compl. at ¶ 32.)   Therefore, the Court finds Plaintiff's claim is typical of the claims of the Class Members, satisfying Rule 23(a)(3).

### 4.   Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).   "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).   "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any

1   conflicts of interest with other class members and (2) will the named plaintiffs and their

2   counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v.*

3   *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

4          The Court has no reason to believe that Plaintiff and her counsel have any

5   conflict of interest with the Class Members and they appear to have vigorously

6   investigated and litigated this action. (*See* ECF No. 21-1 at p. 20; O'Reardon Decl. at

7   ¶ ¶ 3-5, 7.)   Thus, the interests of Plaintiff and the Class Members are aligned.

8   Additionally, Plaintiff's counsel are qualified in class-action litigation, having handled

9   numerous class actions focused on consumer protection, including several class actions

10  involving claims under the Song–Beverly Credit Card Act.  (O'Reardon Decl. at ¶ 2,

11  Exh.. A; ECF No. 21-4 ("Carpenter Decl.") at ¶¶ 2-5.)   Therefore, the Court finds

12  Plaintiff and her counsel adequately represent the Class Members, satisfying Rule

13  23(a)(4)'s adequacy requirement.

## 5.       Predominance – Rule 23(b)(3)

15          "The predominance inquiry focuses on 'the relationship between the common

16  and individual issues' and 'tests whether proposed classes are sufficiently cohesive to

17  warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*,

18  571 F.3d 935, 944 (9th Cir. 2009).

19              Rule 23(b)(3)'s predominance and superiority requirements
             were added to cover cases in which a class action would
20           achieve economies of time, effort, and expense, and promote
             . . . uniformity of decision as to persons similarly situated,
21           without sacrificing procedural fairness or bringing about
             other undesirable results.  Accordingly, a central concern of
22           the Rule 23(b)(3) predominance test is whether adjudication
             of common issues will help achieve judicial economy.

23  *Id.* (internal quotation marks and citations omitted).

24          Here, a common issue predominates over any individual issue—specifically,

25  whether Defendant's alleged policy of requesting and recording personal identification

26  information from consumers in conjunction with credit card purchase transactions

27  during the class period violates the Song–Beverly Credit Card Act.  (Compl. at ¶¶ 2,

28  14.)  Plaintiff states that this issue can be proven with the same class-wide evidence.

(ECF No. 21-1 at p. 21.)  Because resolution of the issue can arguably be resolved for all Class Members in a single adjudication, the Court finds the proposed Class is sufficiently cohesive to warrant adjudication by representation, and that Rule 23(b)(3)'s predominance requirement is satisfied.

### 6. Superiority – Rule 23(b)(3)

"Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka*, 251 F.R.D. at 448 (citing Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). The following factors are pertinent to this analysis:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

As the parties point out, the alternative to a class action would be to have the individual Class Members, which amount to approximately 16,000 individuals, file separate lawsuits.  Requiring Class Members to pursue individual actions would potentially produce lawsuits numbering in the ten of thousands.  That would be both impractical and inefficient.  Such individual litigation would consume judicial resources, impose additional burdens and expenses on the litigants, and present a risk of inconsistent rulings.  In addition, "the potential monetary relief for each Class Member . . . could be as small as $0.01 even if liability is proven," which means a Class Member may not have an interest in bringing an individual action. (ECF No. 21 at p. 30.)  Therefore, the Court finds Rule 23(b)(3)'s superiority requirement is also

satisfied.

For the foregoing reasons, with respect to the Class, the Court provisionally finds the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been met.

## B.    Preliminary Fairness Determination

Having certified the class, the court must next make a preliminary determination of whether the class-action settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026.  A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026.  Consequently, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  Other relevant factors to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within

the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted).

Here, the parties' proposed Settlement agreement complies with all of these requirements. The Court will address the relevant factors in further detail below.

### 1.   Strength of Plaintiff's Case and Risk of Further Litigation

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). As explained by the Supreme Court, "[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).

Here, presumably recognizing the merits of each side's case, the parties agree that Plaintiff and other Class Members would face substantial hurdles prior to certification and trial. (ECF No. 21-1 at p. 9.) Defendant argues it has "several strong defenses" that could make it difficult for Plaintiff and the Class to receive any damages or relief, including "a company policy not to request customer information at the point-of-sale, and to make clear to customers that they are not required to share their information." (*Id.* at p. 10.) Furthermore, although the Song-Beverly Credit Card Act subjects Defendant to a civil penalty of $250.00 for the first violation and up to $1,000 for each subsequent violation, the penalty award is discretionary and could be as little as one cent. *See Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 536 (2011); Cal. Civ. Code § 1747.08(e). Therefore, Defendant argues any civil penalty awarded would be extremely small. (ECF No. 21-1 at p. 10.)

The parties also recognize that further litigation would be "expensive, complex, and time consuming" and that settlement provides the benefits of litigation to all Class Members "without the risk and delays of continued litigation, trial, and appeal." (ECF No. 21 at pp. 10-11.) The parties anticipate that continued litigation of this matter

would include motions for summary judgment and trial. (*Id*. at p. 11.) Absent settlement, the parties anticipate that they would be engaged in litigation for "at least a year or two before Plaintiff or the Class would see any recovery." (*Id*.)

The Court agrees with the parties that the proposed Settlement eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed Settlement. *See Morey v. Louis Vuitton North America, Inc.*, No. 12-cv-02359, 2014 WL 109194, at *5-6 (S.D. Cal. Jan. 9, 2014) (Hayes, J.) (approving class-action settlement in an action brought under the Song-Beverly Credit Card Act).

### 2.    Amount of the Proposed Settlement

According to the parties, the Settlement provides automatic receipt of a voucher by all Class Members, which may also be transferred to family members, providing them with either free merchandise valued between $40.00 and $120.00, or a discount up to $1,500 on a purchase up to $10,000. (ECF No. 21-1 at p. 12.)

As previously noted, under the Song-Beverly Credit Card Act, a plaintiff may bring a civil penalty action to collect fees not exceeding $250 for the first violation or $1,000 for each subsequent violation. *See* Cal. Civ. Code § 1747.08(e). While the proposed Settlement provides merchandise valued much lower than the maximum recovery, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Given the risk that recovery could be as little as $0.01, the Court finds that the amount of the proposed monetary benefits to the Class Members is fair and reasonable. *See Morey*, 2014 WL at *6-7 (approving a class action settlement in an action brought under the Song-Beverly Credit Card Act in which Class Members received merchandise certificates in the amount of $41.00). Therefore, under the circumstances, the Court concludes that the amount offered in the Settlement

weighs in favor of approval.

### 3. Extent of Discovery Completed and Stage of the Proceedings

Prior to negotiation and mediation, the parties requested and exchanged discovery, including Defendant taking the deposition of Plaintiff and giving Plaintiff and Class Counsel confidential information related to its policies and practices. (O'Reardon Decl. at ¶ 4; Settlement at § C; ECF No. 21-1 at pp. 3-4.)  The proposed Settlement was the result of "serious, informed, and non-collusive arm's-length negotiations" and mediation efforts overseen by retired United States Magistrate Judge Edward Infante, who conducted a full-day mediation session on June 23, 2015.  (ECF No. 21-1 at pp. 4, 12;  *Id.* at § D; O'Reardon Decl. at ¶ 7.)  All terms of the Settlement were "heavily negotiated" and numerous drafts of the Settlement were prepared before formally memorializing the proposed Settlement for this Court's approval.  (ECF No. 21-1 at pp. 4, 12-13.)  Given the foregoing, the Court concludes that this factor favors approval.

### 4. Experience and Views of Counsel

The declarations that Class Counsel provide highlight their experience in class actions, including being appointed as lead or co-lead class counsel in numerous certified class actions in state and federal courts.  (O'Reardon Decl. at ¶¶ 1-2, Exh. A; Carpenter Decl.  at ¶¶ 1-3.)  Class Counsel also state that they had a "clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement."  (ECF No. 21-1 at p. 13.)   Class counsel further declares that, at all times, the settlement negotiations were adversarial, non-collusive, and conducted at arm's-length.  (*Id.* at pp. 12-13.)

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Accordingly, giving the appropriate weight to class counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.  *See id.*

**5.    Reaction of the Class to the Settlement**

The proposed Settlement agreement requires two methods of notifying the Class Members.  The proposed Settlement Agreement requires the claims administrator to directly mail class members a summary version of the class notice to their respective last-known addresses, or email a different summary notice to their last-known email addresses, depending on which address Gucci has on file for each Class Member. (Settlement at § 3.2.)  Moreover, the claims administrator will establish a Settlement website on which the full class notice, complaint, Settlement Agreement, and other relevant documents will be made available.  (*Id*. at § 3.2.3.)  Both forms of summary notice provide this website address.  (*Id*. at § 3.2.)

Each method of notifying the Class of the Settlement provides directions to where Class Members can learn about the procedures regarding opting out or objecting to the Settlement.  (*Id.* at Exhs. B-D.)  Consequently, Class Members will have an opportunity to object or opt out of the Settlement.  Thus, at this time, this factor weighs in favor of approving the Settlement.

Based on the foregoing, the Court finds the Settlement falls within the range of reasonableness meriting possible final approval.  The Court therefore preliminarily approves the Settlement Agreement and the terms and conditions of settlement set forth therein, subject to further consideration at the Final Approval Hearing.

**C.    Proposed Class Notice**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

15cv00045

Fed. R. Civ. P. 12(c)(2)(B).  "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process."  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

The proposed notices describe the litigation, the terms of the Settlement, and each Class Members' rights and options under the Settlement.  (Settlement at Exhs. B-D.)  The claims administrator will mail the summary notices by first-class mail, postage prepaid, to the last-known address of each Class Member, or send the notice to the last-known email address of each Class Member, for whom Defendants' records contain such information.  Both forms of notice state the deadlines for opting out or objecting to the Settlement, and direct the recipient to the Settlement website for further information, including accessing the relevant documents.  (Settlement at Exhs. C, D.)  In addition, the proposed Settlement requires the claims administrator to operate a toll-free telephone number for Class Members to call for more information about the Settlement.  (*Id.* at § 3.2.4.)

Having reviewed the proposed class notices, the Court finds that the methods and contents of the notices comply with due process and Rule 23, are the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.  Therefore, the Court approves, as to form and content, the proposed notices to be provided to Settlement Class Members as set forth in Section 3.2 of the Settlement Agreement, which consist of the Email Notice, Full Class Notice, and U.S. Mail Notice (collectively the "Class Notice"), which are attached collectively as Exhibits B-D to the Settlement Agreement.

///

///

///

///

///

///

15cv00045

### III.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** the parties' joint motion for preliminary approval of the class action Settlement.  Accordingly, the Court hereby **ORDERS** the following:

(1)   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby conditionally certifies the following Class for settlement purposes only: "All persons from whom Gucci requested and recorded personal identification information in conjunction with a credit card transaction in any of Gucci's eight (8) freestanding, full-priced California boutique stores during the period of December 8, 2013 through the Preliminary Approval Order date.  Excluded from the Class are any specific transactions that involved shipping, delivery, servicing, installation, or a special order."

(2)   The Court hereby appoints the Plaintiff in the Action as Class Representative of the Class.

(3)   The Court hereby appoints Thomas J. O'Reardon II, of Blood Hurst & O'Reardon, LLP, and Todd D. Carpenter, of Carpenter Law Group as Class Counsel to represent the Class.

(4)   The Court hereby preliminarily approves the Settlement Agreement and the terms and conditions of Settlement set forth therein, subject to further consideration at the Final Approval Hearing.

(5)   The Court will hold a "Final Approval Hearing" on **August 22, 2016**, at **10:30 a.m.**, in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, **Courtroom 4B** (4th Floor - Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

(a)   finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure,

and thus, the claims of the Class should be certified for purposes of effectuating the Settlement; determining whether the proposed Settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable and adequate and should be approved by the Court;

(b)   considering the motion of Class Counsel for an award of Plaintiffs' Counsel's fees and costs;

(c)   considering the motion  of the Plaintiff for a service award, if any;

(d)   considering whether the Court should enter the [Proposed] Final Judgment and Order Approving Settlement;

(e)   considering whether the releases by the Class Members as set forth in the Settlement Agreement should be provided; and

(f)   ruling upon such other matters as the Court may deem just and appropriate.

(6)   The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Class Members.

(7)   Any motion in support of the Settlement and any motion for an award of Plaintiff's Counsel's fees and costs and/or Plaintiff's service award, if any, must be filed with the Court no later than **June 1, 2016**. Any opposition must be filed no later than **14 days** after the motion is filed, and any reply must be filed no later than **28 days** after the motion is filed.

(8)   The Court approves the parties' agreement to allow Gucci to designate a nationally recognized claims administration company Gucci prior to the Settlement Notice Date to serve as the Court-appointed Claims Administrator for the Settlement.

(9)   The Claims Administrator shall carry out all duties set forth in the Settlement Agreement in the manner provided in the Settlement Agreement.

15cv00045

(10)   The costs of the Class Notice, processing of Vouchers, creating and maintaining the Settlement Website, and all other Class Notice and Claim Administration expenses shall be paid by Defendant in accordance with the applicable provisions of the Settlement Agreement.

(11)   All Settlement Class Members shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Settlement Class.

(12)   The Court approves the Parties' proposed form of the Settlement Voucher. Unless otherwise provided in the Settlement Agreement as it relates to Settlement Class Members as described in Section 2.2 of the Settlement Agreement, all Settlement Class Members will automatically receive either by email or U.S. Mail a Voucher to be used at any Eligible Voucher Redemption Store in accordance with the instructions contained therein.

(13)   Any Settlement Class Member may enter an appearance in the Action, at his or her own expense, individually or through counsel.  All Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

(14)   Any person falling within the definition of the Class may, upon his or her request, be excluded from the Settlement Class.  This is also referred to as "opting out" of the Settlement Class.  Any person wishing to be excluded from (opt out from) the Settlement Class must submit a written "Request for Exclusion" to the Claims Administrator postmarked or delivered no later than no later than ninety (90) calendar days after the date of notice of entry of this Order (the "Exclusion Deadline").  The Request for Exclusion must include: (a) the person's name; (b) the person's address; (c) the person's telephone number; (d) the person's signature; (e) a statement that the person is a Class Member and that he or she wishes to be excluded from the Settlement Class; and (f) the case

name and number: *Jessica Manner v. Gucci America, Inc.*, Case No. 3:15-cv-00045 (S.D. Cal.). Requests for Exclusion purportedly filed on behalf of groups of persons are prohibited and will be deemed to be void. A Request for Exclusion must be written, and may not be asked for telephonically or by email.

(15) Any Class Member who does not send a completed, signed Request for Exclusion with the information listed in Paragraph 14 above to the Claims Administrator postmarked or delivered on or before the Exclusion Deadline will be deemed to be a Settlement Class Member for all purposes and will be bound by all further orders of the Court in this Action and by the terms of the Settlement, if finally approved by the Court. All persons who submit valid and timely Requests for Exclusion in the manner set forth in this Paragraph and Paragraph 14 above shall have no rights under the Settlement and shall not be bound by the Settlement Agreement or the Judgment and Final Approval Order approving the Settlement.

(16) No later than fourteen (14) calendar days after the Exclusion Deadline, the Claims Administrator shall cause to be filed with the Court a list reflecting all Requests for Exclusions.

(17) Any Settlement Class Member who desires to object either to the Settlement, the award of Plaintiff's Counsel's fees and costs, or Plaintiff's service award, if any, must timely file with the Clerk of this Court and timely serve on the Parties' counsel identified below by hand or first-class mail a notice of the objection(s) and proof of membership in the Settlement Class and the grounds for such objections, together with all papers that the Settlement Class Member desires to submit to the Court no later than the deadline as set forth in the Class Notice, which is ninety (90) calendar days after the date of notice of entry of this Order (the

"Objection Deadline").  Settlement Class Members may not both object and request exclusion (opt out).  If a Settlement Class Member submits both a Request for Exclusion and an objection, the Request for Exclusion will be controlling.  To be considered by the Court, the objection must also contain all of the information listed in Paragraph 18 below.  The Court will consider such objection(s) and papers only if such papers are received on or before the Objection Deadline, by the Clerk of the Court and by Class Counsel and Defendant's counsel.  Such papers must be sent to each of the following persons:

> Clerk of the Court
> United States District Court,
> Southern District of California
> 333 West Broadway, Suite 420
> San Diego, CA 92101

> Thomas J. O'Reardon II
> toreardon@bholaw.com
> BLOOD HURST & O'REARDON, LLP
> 701 B Street, Suite 1700
> San Diego, CA 92101
> Telephone: (619) 338-1100

> Stephanie A. Sheridan
> Stephanie.sheridan@sedgwicklaw.com
> SEDGWICK LLP
> 333 Bush Street, 30th Floor
> San Francisco, CA 94104
> Telephone: (415) 627-1410

(18)   All objections must include: (a) a heading which refers to the Litigation, *Jessica Manner v. Gucci America, Inc.*, Case No. 3:15-cv-00045 (S.D. Cal.); (b) the objector's full name, telephone number, and address (the objector's actual residential address must be included); (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons for his or her objection; (e) whether the objector intends to appear at the Final Approval Hearing on his or her own behalf or through counsel; (f) a statement that the objector is a Class Member; and (7) the objector's dated, handwritten signature (an electronic signature

15cv00045

or attorney's signature are not sufficient). Any documents supporting the objection must also be attached to the objection. If any testimony is to be given in support of the objection, the names of all persons who will testify must be set forth in the objection.

(19)   All objections must be filed with the Clerk and served on the Parties' counsel no later than the Objection Deadline.  Objections that do not contain all required information, or are received after the Objection Deadline, will not be considered at the Final Approval Hearing.

(20)   Attendance at the Final Approval Hearing is not necessary; however, any Class Member wishing to be heard orally with respect to approval of the Settlement, the motion for an award of Plaintiff's Counsel's fees and costs, or the motion for Plaintiff's service award, if any, is required to provide written notice of his or her intention to appear at the Final Approval Hearing no later than the Objection Deadline by filing a "Notice of Intention to Appear".  The Notice of Intention to Appear must include the Class Member's name, address, telephone number, and signature and must be filed and served as described in Paragraph 17 of this Order. Class Members who do not oppose the Settlement, the motion for an award of Plaintiff's Counsel's fees and costs, or the motion for Plaintiff's service award, if any, need not take any action to indicate their approval.  A person's failure to submit a written objection in accordance with the Objection Deadline and the procedure set forth in the Class Notice waives any right the person may have to object to the Settlement, the award of Plaintiff's Counsel's fees and costs, or Plaintiff's service award, if any, or to appeal or seek other review of the final Judgment and Final Approval Order approving the Settlement.

///

///

- 21 -

15cv00045

1     (21)    The parties are ordered to carry out the Settlement Agreement in the

2             manner provided in the Settlement Agreement.

3     **IT IS SO ORDERED.**

4

5     **DATED: March 16, 2016**

6

7             **Hon. Cynthia Bashant**
              **United States District Judge**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15cv00045