UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA MANNER, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>GUCCI AMERICA, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 15-cv-00045-BAS(WVG)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>**[ECF No. 31]** |

Plaintiff files a motion for attorneys' fees, costs, and class representative service award requesting $440,445.98 in attorneys' fees, $9,554.01 for costs, and $3,500 as an incentive award for the named Plaintiff Jessica Manner. (ECF No. 31.) Defendant Gucci America, Inc. opposes, arguing that the request is "grossly excessive, completely out of line with similar Song-Beverly cases, and legally unsound." (ECF No. 36.) Gucci requests that the Court award no more than $85,000 in attorneys' fees and a $500 incentive award for Plaintiff. (*Id.*)

The Court held a hearing on the issue on August 22, 2016. (ECF No. 43.) At the hearing, the Court expressed grave reservations about the amounts requested for attorneys' fees and Plaintiff's incentive award. The Court indicated the number of hours billed by Plaintiff's counsel appeared unreasonable, but it invited the attorneys to file more detailed

time sheets if they felt the time sheets would assist the Court in determining the lodestar amount. Plaintiff's counsel has now submitted time sheets detailing the hours billed.[1]

After reviewing the time sheets and considering the arguments of counsel both oral and written, the Court concludes that the requests for attorneys' fees and the incentive award are excessive. Accordingly, the Court **GRANTS IN PART** Plaintiff's motion, awarding $135,711.25 in attorneys' fees and $500 as an incentive award for Plaintiff.

## I. BACKGROUND

On December 8, 2014, Plaintiff filed a civil class action in San Diego Superior Court. (ECF No. 1.) On January 9, 2015, Gucci removed the case to federal court. (*Id.*) The parties voluntarily exchanged some limited, written discovery, and Gucci took the deposition of the named Plaintiff. (ECF No. 21-1 at 3–4.) On June 23, 2015, the parties participated in a one-day mediation with retired U.S. Magistrate Judge M. Edward Infante, and a settlement was reached. (*Id.* at 4.) On July 31, 2015, without further litigation, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement. (ECF No. 21.) The Court granted the parties' request (ECF No. 27), and on June 1, 2016, the parties moved for final approval of the settlement (ECF No. 34).

## II. STATEMENT OF FACTS

### A. Underlying Case

Plaintiff alleges that in September 2014, she made a purchase at a Gucci store using a credit card. (Compl. ¶ 6, ECF No. 1.) Plaintiff claims the cashier asked her for her full name, mailing address including zip code, telephone number, and email address, which the

---

[1] In the submitted time sheets, not only do the number of hours worked by the attorneys increase from that stated in the moving papers, but Mr. Blood's billable rate has been increased from $790 to $810 an hour. After Gucci highlighted this discrepancy, Plaintiff's counsel explained that: "The only reason $810 appeared for Mr. Blood is that when the detailed timesheet was printed for submission to [the] Court, his timekeeping software automatically updated his rate from $790 to his billing rate for other lawsuits." (ECF No. 49 at 5.)

cashier then entered into the electronic point-of-sale register to complete the transaction. (*Id.*) Plaintiff thus alleges that Gucci violated California's Song-Beverly Credit Card Act and sues on behalf of the class because Gucci "implement[ed] an Information Capture Policy whereby Defendant's cashiers request and record personal identifying information . . . from customers making purchases with credit cards at the point-of-sale in Defendant's retail stores." (*Id.* ¶ 2.)

Gucci denies that it violated the Song-Beverly Credit Card Act. It maintains that, at the time of Plaintiff's purchase, it had in place a company policy to not request customer information at the point-of-sale and to explain to customers that they are not required to share their information. (ECF No. 36.) Gucci argues that, even if the policy was not followed during Plaintiff's individual transaction, Gucci's maintenance of such a policy would protect it under Song-Beverly's safe harbor provision, California Civil Code Section 1747.08(e). (*Id.*) Nonetheless, Gucci claims it opted to settle this action at the outset to avoid litigation expenses. (*Id.*)

### B. <u>Settlement and Attorneys' Fees</u>

Within weeks of the Complaint being filed, Gucci contacted Plaintiff's counsel and indicated an interest in settling the case through mediation. (Declaration of Stephanie Sheridan ("Sheridan Decl.") ¶ 2, ECF No. 36-2.) Gucci agreed to voluntarily turn over eight pages of discovery that detailed its internal policies. (*Id.* ¶ 3.) Gucci conducted a short, two-hour deposition of the named Plaintiff. (*Id.* ¶ 4, Ex. A.) Six months after the Complaint was filed, the parties engaged in a one-day mediation with Judge Infante, and the case resolved. (*Id.* ¶ 5.)

To minimize the attorneys' fees expended by Plaintiff's counsel, Gucci's lawyers prepared the joint motion to continue the Early Neutral Evaluation Conference for mediation, the Settlement Agreement, and the class notices. (Sheridan Decl. ¶ 5.) In the motion for attorneys' fees, Plaintiff's counsel claim the lodestar amount should be calculated as $213,642.50. Plaintiff's counsel submit Declarations indicating that the

partners on the case (Blood, O'Reardon, and Carpenter) spent 328.55 hours at rates ranging from $560–$790 an hour. (Declaration of Thomas O'Reardon and Todd Carpenter, ECF Nos. 31-2 to 31-4.) Plaintiff's counsel also submit bills for associate counsel for 11.25 hours at rates ranging from $320–$400 an hour and 21.5 hours of paralegal time at a rate of $280 an hour. To this amount, $213,642.50, Plaintiff's counsel request the Court apply a multiplier of 2.1.

In the time sheets submitted by Plaintiff's counsel after oral argument, they claim this lodestar amount has now increased to $255,200. (ECF No. 48-1.) The increase in the lodestar amount appears to be due to (i) additional hours being billed by Plaintiff's counsel and (ii) Mr. Blood's hourly rate being arbitrarily increased from $790/hour to $810/hour. (*See id.*)

The settlement contemplates that 28,399 class members will receive a voucher, good for six months from the date it is sent, redeemable for a free Gucci gift item retailed between $40.00 and $120.00, or a 15% discount on a single full price merchandise purchase transaction of up to $10,000. In addition, Gucci agrees it will no longer request or record personal identification information in conjunction with credit card purchase transactions.[2] Gucci will pay all notice and administration costs, attorneys' fees, and any incentive award for Plaintiff.

## III. LEGAL STANDARD

Courts have an independent obligation to ensure that the amounts requested for attorneys' fees and any class representative service award, like the settlement, are reasonable. *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have

---

[2] Gucci maintains that it had a policy already in place prohibiting employees from requesting or recording personal identification information in conjunction with credit card purchase transactions in compliance with California law. Nonetheless, for purposes of settlement, Gucci is not opposed to reiterating this policy.

– 4 –

the discretion to employ a "percentage of recovery method." *Id.* at 942. Typically, courts calculate 25% of the fund as a "bench mark" for a reasonable fee award. *Id.* Injunctive relief should generally be excluded from the value of the common fund when calculating attorneys' fees because most often the value of the injunctive relief is not measurable. *Staton v. Boeing Co.*, 327 F.3d 938, 945–46 (9th Cir. 2003).

"The 25% benchmark rate, although a starting point for the analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Thus, court are encouraged to cross-check this method by employing the "lodestar method" as well. *In re Bluetooth*, 654 F.3d at 949.

In the "lodestar method," the court multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate for the work. *In re Bluetooth*, 654 F.3d at 941. The hourly rate may be adjusted for the experience of the attorney. *Id.* "Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The resulting amount is "presumptively reasonable." *In re Bluetooth*, 654 F.3d at 949. However, "the district court . . . should exclude from the initial fee calculation hours that were not 'reasonable expended.'" *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (*Hensley v. Eckerhart.*, 401 U.S. 424, 433–34 (1983)). The court may then adjust this presumptively reasonable amount upward or downward by an appropriate positive or negative multiplier reflecting a whole host of reasonableness factors including the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment, and, foremost in considerations, the benefit achieved for the class. *In re Bluetooth*, 654 F.3d at 942. The court may find a fee request is excessive but that there is no further evidence class counsel betrayed class interests for its own benefit, and thus uphold the settlement agreement, while lowering the fee award. *Id.*

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their

representative[]." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Nonetheless, the court has an obligation to assure that the amount requested is fair. *In re Bluetooth*, 654 F.3d at 941. "The propriety of incentive payments is arguably at its height when the award represents a fraction of the class representative's likely damages . . . . But we should be more dubious of incentive payments when they make the class representative whole, or (as here) even more than whole." *In re Dry Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013).

## IV. ANALYSIS

Turning first to the percentage-based method of recovery, the Court notes that, as a result of the Settlement Agreement, 28,399 class members are entitled to a free gift ranging in value from $40–$120, and that at least one of the offered gifts must be worth $100. Plaintiff's counsel, therefore, calculated the likely common fund by multiplying 28,399 by $100, which equals $2,839,900.[3] Plaintiff's counsel notes that the attorneys' fees requested are only 15.5% of this amount and urges the Court to award attorneys' fees using this method.

The problem with using this method to award attorneys' fees is that it may vastly overinflate the value of the settlement to the class. It assumes every single class member will go to one of the California Gucci stores within six months to redeem the gift. The likelihood of every class member claiming this gift is low. The Court notes that at least two class members have written to the Court indicating how difficult it would be for them to get to a California store in the next six months. The Court assumes they are not alone. It is challenging to predict how many members of the class will actually claim their gift, but the

---

[3] If all class members choose a gift valued at $40, the recovery will be $1,135,960, and if all class members choose a gift valued at $120, the recovery will be $3,407,880. The actual recovery could be much larger since class members also have the option of using a discount on a purchase, which could be worth as high as $1,500 each.

likely pay-out from Gucci will be considerably less than the $2.8 million urged by Plaintiff's counsel.

Furthermore, in a case like this one, where: (1) the settlement was proposed very early on in the litigation; (2) there was virtually no motion practice; (3) there were only a few pages of discovery to review; (4) there were no discovery disputes; and (5) there was only one two hour deposition, the Court finds a lodestar calculation is the superior method for calculating attorneys' fees.[4]

First, the Court is directed to determine the number of hours Plaintiff's counsel reasonably expended in the litigation. As an initial matter, the Court notes that a substantial portion of the requested fees were incurred *after* the settlement was reached at the mediation on June 23, 2015. Plaintiff's counsel's billing records reflect that 285.6 of the 449.25 hours they claim to have spent on this case were expended after the mediation. These hours amount to $155,437 of the requested $255,200 lodestar. This development is startling given that neither side disputes that Gucci's counsel actually drafted the settlement agreement to save attorneys' fees, and it casts doubt on the value to the class of the billed hours.

Upon closer inspection, it is apparent that the bulk of these hours were expended in drafting and defending the attorneys' fees request—hours that should have been excluded from the lodestar calculation. *See In re Wash. Public Power Supply Sys.*, 19 F.3d at 1299. Although the vagueness of the time sheets does not always make it clear, the Court

---

[4] The free gifts class members will receive ranging in value from $40–$120 are not coupons because they do not "require class members to hand over more of their own money before they can take advantage of the [gift]." *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 951. Therefore, although class members have the alternative option of a discount on Gucci merchandise, "*the* [singular] award of the coupons" is not "the condition precedent to the award of attorneys' fees." *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1181 (9th Cir. 2013) (alteration in original) (quoting 28 U.S.C. § 1712(a)). Thus, the Court will not apply 28 U.S.C. § 1712(a)'s redemption value test for attorneys' fees in coupon settlements to this case. *See id.*; 28 U.S.C. § 1712(a). Moreover, the parties' settlement is not one "in which counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 951.

calculates the following hours appear to be time spent obtaining the attorneys' fees in this case and not reasonably expended on behalf of the class:

| | | | |
|---|---|---|---|
| O'Reardon 64.5 hours x $560 | = | $36,120 |
| Blood 14.5 hours x $810 | = | $11,745 |
| Chaseton 20 hours x $280 | = | $5,600 |
| MacPherson 53.25 hours x $435 | = | $23,163.75 |
| Carpenter 20.9 hours x $600 | = | $12,540 |

Therefore, from the lodestar submitted by the attorneys' time sheets of $255,200, the Court deducts the above amounts and concludes that the lodestar amount submitted should have been $166,031.25. *See In re Wash. Public Power Supply Sys.*, 19 F.3d at 1299.

In addition, as Gucci points out in its surreply, several hours were spent searching for a plaintiff, before any plaintiff was represented and before Ms. Manner made the purchase at issue. By the Court's calculations this effort includes 2.75 hours billed by O'Reardon at a rate of $560 or $1540. The Court finds this time was not reasonably expended on behalf of the class and therefore decreases the lodestar amount from $166,031.25 to $164,491.25.

Additionally, attorney Carpenter bills 23.7 hours at a rate of $600/hour or $14,220 for drafting discovery that was never used in this case. The Court finds this time did not benefit the class and was not necessary in light of the fact that Gucci notified Plaintiff's counsel of its willingness to voluntarily provide discovery and resolve the case within weeks of the Complaint being filed. Therefore, the Court deducts this amount as well, resulting in a lodestar amount of $150,271.25.

Finally, Plaintiff's counsel inexplicably appears to spend an inordinate amount of time on internal discussion between counsel. One quarter of the billed hours are for internal discussions between the attorneys. Therefore, the Court finds the following amounts were not reasonably expended:

//

$$
\begin{aligned}
\text{Carpenter .7 hours} \times \$600 &= \$420 \\
\text{O'Reardon 6 hours} \times \$560 &= \$3,360 \\
\text{Blood 12 hours} \times \$810 &= \$9,720 \\
\text{Brown .75} \times \$440 &= \$330
\end{aligned}
$$

Deducting these amounts from the lodestar amount, the Court concludes the reasonable hours expended result in a lodestar amount of $136,441.25.

Once the Court determines the number of hours reasonably expended, the Court multiplies these hours by a reasonable hourly fee. Plaintiff's counsel provides declarations and support for their claim that their billing rates are reasonable given the prevailing rate in the community. However, because of apparent error, Mr. Blood increased his hourly rate on the billing records from $790/hour to $810/hour. Therefore, the lodestar amount should be decreased by 36.5 hours x $20/hour or $730 to $135,711.25.[5] With this discrepancy corrected, Plaintiff's counsel's rates are afforded a "presumption of reasonableness." *See United States v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015). The Court is skeptical that Mr. Blood's $790/hour rate is reasonable based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *See id.* (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)). However, the Court finds Gucci has not adequately rebutted the presumption of reasonableness afforded to this rate or the remainder of Plaintiff's counsel rates, and the Court therefore finds their rates are reasonable.

Plaintiff's counsel then urges this Court to adjust the lodestar amount—now calculated at $135,711.25—upward by a positive multiplier. The Court declines to do so. The Court finds this case was not particularly complex, nor did it require a great deal of expertise. Counsel did not undertake a great deal of risk in taking on the case, and, because the case resolved remarkably quickly—within six months of being filed and with counsel engaged in settlement discussion immediately upon the filing of the Complaint—Plaintiff's

---

[5] Although Mr. Blood billed 63 hours, those hours have already been decreased by the Court as noted above to 36.5 hours.

– 9 –

counsel was not required to assume a heavy burden of litigating this case to the exclusion of all others.[6]

Ultimately, the Court finds the lodestar calculation more reasonably reflects the amount counsel is entitled to recoup for settlement in this case. For that reason, the Court **GRANTS IN PART** Plaintiff's request for attorneys' fees and awards Plaintiff's counsel $135,711.25 in attorneys' fees.

With respect to the incentive award, the Court notes similarly that the named Plaintiff did not take on any risk—either financial or otherwise, did not face any personal difficulties or notoriety in becoming a class representative, and did not spend a great deal of time or effort on her class representative duties.[7] Presumably, Plaintiff will also be entitled to her $40–120 free gift from Gucci as well, as part of the general class, and thus the incentive award requested is above and beyond this remuneration. The Court consequently finds that Gucci's request to reduce the incentive award to $500 is appropriate. This award will adequately compensate Plaintiff for the amount of time she invested above and beyond her participation in the general class. Therefore, the Court **GRANTS IN PART** Plaintiff's request for an incentive award and awards the named Plaintiff an incentive award of $500.

Gucci does not object to Plaintiff's request for reimbursement of costs in the amount of $9,554.01. The Court finds these amounts reasonable and **GRANTS** Plaintiff's request for costs.

//
//
//

---

[6] The Court notes fees awarded to attorneys for similar settlements range from $130,882 to $189,238, and these cases lasted longer and required more attorney time. (Sheridan Decl. Ex. B.)

[7] Other than a two-hour deposition and keeping in touch with Class Counsel during the six months the case was pending, Plaintiff does not detail any great time she invested in litigating this case. Additionally, the Court finds it significant that, under the Song-Beverly Credit Card Act, the requested $3,500 incentive award would give Ms. Manner considerably more than she was likely to receive as a plaintiff.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Plaintiff's motion for attorneys' fees, costs, and class representative service award (ECF No. 31). The Court awards Plaintiff $135,711.25 in attorneys' fees, $9,554.01 in costs, and $500 as an incentive award.

**IT IS SO ORDERED.**

DATED: October 13, 2016

Hon. Cynthia Bashant
United States District Judge